## Mary Kelley v. Charles Malhoit, et al.

1. DRAM-SHOP ACT—*what not defense to action of case brought under.* It is not a defense to an action on the case brought under the Dram-Shop Act for damages resulting from the death of the plaintiff's husband while intoxicated, for the defendants to show that such intoxication was principally caused by the sale to the deceased of liquor by one not a defendant to the action.

2. DAMAGES—*evidence competent upon question of, in action of case under Dram-Shop Act.* In such an action the habits of the deceased as to the drinking of liquor and the effect upon him of such liquor, are both proper subjects of inquiry by the defendants as bearing upon the question of actual damages and the loss sustained.

3. DEGREE OF PROOF—*when instruction as to, is erroneous.* An instruction which requires that the plaintiff should prove his case to the satisfaction of the jury, is erroneous.

Action on the case under Dram-Shop Act. Error to the Circuit Court of Christian County; the Hon. TRUMAN E. AMES, Judge, presiding. Heard in this court at the November term, 1903. Reversed and remanded. Opinion filed June 28, 1904.

FRANK P. DRENNAN, for plaintiff in error.

J. E. HOGAN and J. C. McQUIGG, for defendants in error.

MR. JUSTICE GEST delivered the opinion of the court.

This is a suit in case by Mary Kelley, widow of Peter Kelley, against the defendants in error, saloon keepers in Pana, in Christian county, under the Dram-Shop Statute.

The declaration is in the usual form, charging that defendant sold intoxicating liquors to Peter Kelley and thereby caused his intoxication, and that while so intoxicated and by reason thereof, he went upon the track of a railroad and was struck and killed by a passing train and thereby plaintiff was deprived of her means of support. The jury found the issue for the defendants and judgment was entered against plaintiff for costs.

The proof in the case shows beyond question that Peter Kelley was thoroughly intoxicated on the occasion of his death. The plaintiff undertook to prove it and made proof tending 'to show that the deceased got liquor that day and evening at the saloons of the defendants; if any evidence was lacking to show that he became intoxicated it was abundantly supplied by the defendants. To show that Kelley was intoxicated was one of the material elements of plaintiff's case and it matters not which side proves it. The defendants put in their proof on this point upon the theory that they would prove it was liquor that Kelley got at Stanton's saloon which produced his intoxication and not the liquor which, if any, he got at the saloons of the defendants. Counsel for defendants say that the proof clearly establishes "that on the evening in question he (Kelley) spent practically his whole time from half past six to eleven o'clock P. M. in the saloon of John Stanton and drank therein numerous times." Concede that proposition and it makes no defense. The question still remains, did the defendants furnish him any liquor which caused his intoxication in whole or in part? The proof both by plaintiff and defendants is that from half past six to eleven o'clock that night he was seen time and again at Malhoit's saloon, at Condon's and at Stanton's, and there is proof that he drank at all three places. The drinks he took produced intoxication and if he got drink

at each one of the defendants' saloons, which helped to produce his intoxication, then these defendants are just as liable as they would be if he got all that he drank at their saloons.   The law does not provide that the dram seller who contributes the most material to the intoxication shall alone be liable.   Stanton was not a defendant but that makes no difference.   Such evidence would be just as admissible on behalf of these defendants if Stanton were a co-defendant as it is without Stanton as a defendant.   In either case it does not prove or tend to prove that these defendants did not furnish some of the liquor that made Kelley drunk.   But we fail to see that plaintiff has anything to complain of on account of the proof being admitted.   The habits of deceased as to drinking of liquor and the effect on him were proper subjects of inquiry by the defendants as bearing upon the question of actual damages, the loss sustained.

In view of the statement made by counsel for plaintiff in open court that plaintiff made no claim to exemplary damages, the inquiry made of the plaintiff when on the witness stand as to whether she had drunk with her husband ought to have been allowed, but no harm came to plaintiff thereby.   She denied that she ever drank with him and there was no proof that she ever did.

The first part of the second instruction given on behalf of defendants reads, "that even though the deceased did die or was killed in some unknown manner as alleged." The declaration does not aver that he was killed in some unknown manner; it avers specifically that he was crushed to death by a train of cars, and that it was by reason of his intoxication that he went upon the track and thereby was killed; there is nothing uncertain or unknown in what is alleged.   The instruction is a strong intimation to the jury that the plaintiff alleges and that the proof shows that Kelley came to his death in some manner unknown.   We do not understand from the record that there is any substantial ground of controversy about the manner of his death or the cause of it.   The courts hold in such cases as this

that the intoxication was the proximate cause of the death though the immediate instrument of death be the train of cars. Counsel for defendants as to this instruction say: "The declaration shows that he was run over by a train, which might have occurred in many different ways, so that the manner of running over of course was, as a matter of allegation and a matter of fact, not disclosed." We fail to understand this explanation or to see how it helps the instruction. We would not reverse the judgment for the error in this instruction.

The fifth instruction given for the defendants is: "You are instructed that even though the evidence does show that the deceased was intoxicated on the day of the accident, still, if the evidence further shows that he recovered from such intoxication and started home, and then became intoxicated upon liquor given him by some person other than defendants, and with which said defendants were in nowise knowingly connected, and his death was the result of such last intoxication, then the defendants in this case should not be liable, and you will so find." The giving of this instruction was error. It was an intimation to the jury that there was some proof before them that after Kelley became intoxicated on the day of his death, he recovered from it and became intoxicated again, and then tells them that if this second intoxication was occasioned by others than the defendants, the defendants would not be liable. There is no proof in this record of any recovering from intoxication or of any second intoxication. The proof is that he began to get drunk between six and seven p. m., became drunk by seven o'clock, and continued without break or abatement to grow more and more drunk till eleven o'clock, when he was turned out of Stanton's saloon and started for home.

The seventh instruction given for defendants is: "The jury are further instructed that in all civil actions of this kind it is necessary before there can be a recovery that the facts should be proved to the satisfaction of the jury by a preponderance of all the evidence in the case." No dis-

cussion of this instruction is necessary. It is manifestly erroneous; and it is not cured by any other or justified by any other asked by plaintiff. In civil suits proof is never required "to the satisfaction of the jury."

Instruction number 11 should have contained the phrase "from the evidence," but no harm came in this case from its omission.

There was evidence admitted of conversation between the defendant Malhoit and Mrs. Kelley relative to him and Stanton being made parties to the suit, and what Miss Mc-Kenna said, which appears to us to be wholly irrelevant. The only effect of it would be to confuse the jury as to the material questions involved in the case.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*